UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
JESSICA SZABO a/k/a JESSICA C. GRAHAM,

                              Plaintiff,                               **MEMORANDUM AND ORDER**
                                                                                       16-CV-3683 (PKC)(LB)

         - against-

COURT OFFICER STEPHANIE
PARASCANDOLO, SERGEANT JAMES
WILSON, POLICE OFFICER VINCENT
PALMER, POLICE OFFICER WILLIAM
KULIK, POLICE OFFICER CARA
GAMBARDELLA, POLICE OFFICER
ELISA RANIERI, POLICE OFFICER DIA
CASCONE, POLICE OFFICER TYEASTE
DEGROAT, and POLICE OFFICER
TARELL WINFIELD,

                                Defendants.
---------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Plaintiff Jessica Szabo a/k/a Jessica C. Graham ("Plaintiff" or "Szabo") brings this action against Defendants Sergeant James Wilson, Police Officer Vincent Palmer, Police Officer William Kulik, Police Officer Cara Gambardella, Police Officer Elisa Ranieri, Police Officer Dia Cascone, Police Officer Tyeaste DeGroat, and Police Officer Tarell Winfield of the New York City Police Department (collectively, the "City Defendants"), as well as Court Officer Stephanie Parascandolo,[1] alleging violations of 42 U.S.C. § 1983 for excessive force, undue delay, and failure to intervene, in connection with Plaintiff's April 2016 arrests and subsequent detention. Before

---

[1] In her complaint and deposition, Plaintiff identifies Defendants by the following pseudonyms: James Wilson ("John Doe #1"), Vincent Palmer ("John Doe #2"), William Kulik ("John Doe #3"), Cara Gambardella ("Jane Doe #4"), Elisa Ranieri ("Jane Doe #5"), Dia Cascone ("Jane Doe #6"), Tyeaste DeGroat ("Jane Doe #7"), Tarell Winfield ("Jane Doe #8"), and Stephanie Parascandolo ("Jane Doe #2"). (*See* Dkts. 1, 25, 29.) However, the Court will refer to Defendants by their proper names in this Order.

the Court are Defendant Parascandolo's and the City Defendants' motions for summary judgment. For the reasons stated below, Defendant Parascandolo's motion for summary judgment is denied and the City Defendants' motion is granted in part and denied in part.

## BACKGROUND

I.  **Relevant Facts**[2]

   A. **April 15, 2016**

On April 15, 2016, Plaintiff arrived at the Richmond County Courthouse in Staten Island, New York, to perform a citizen's arrest of a judge. (City Defendants' 56.1 Statement ("Defs.' 56.1"), Dkt. 96, at ¶ 1.) Court Officer Stephanie Parascandolo told Plaintiff to leave the building and grabbed Plaintiff's phone from her ear, scratching Plaintiff across the right side of her face. (*Id.* at ¶ 2.) Plaintiff then proceeded to assault Parascandolo, "causing a large laceration, bleeding and pain in the left side of the officer's head." (*Id.* at ¶ 3; Dkt. 95-9; Dkt. 95-10.) Plaintiff was then arrested by other court officers. According to Plaintiff, Parascandolo kicked her in the right calf while she was prone and handcuffed. (Deposition of Jessica Szabo ("Szabo Dep."), Dkt. 92-4, at 14:8-10.) The entire incident was captured on the courthouse surveillance system. (Video, Dkt. 95-8.) Plaintiff alleges that as a result of Parascandolo's actions, she had a scratch on her face and swelling in her calf. (Szabo Dep. at 14:19-15:12, 108:8-16.) Plaintiff was treated at the scene by EMS, who cleaned the scratches on her face, but Plaintiff refused to go to the hospital. (*Id.* at 15:23-16:4.) Plaintiff was subsequently taken to the 120th Precinct and charged with

---

[2] Unless otherwise noted, a standalone citation to Defendants' 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to Defendants' 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document. Defendant Parascandolo failed to file a Rule 56.1 Statement. Therefore, the Court will refer to the City Defendants' 56.1 Statement as "Defs.' 56.1."

2

assaulting Parascandolo. Plaintiff pleaded guilty to assault in the second degree on May 23, 2017. (Dkt. 95-13.)

### B. April 16, 2016

#### 1. The First Incident

On April 16, 2016, Plaintiff was waiting to be transported from the 120th Precinct to criminal court, when Defendants William Kulik and Vincent Palmer asked her if she took any medication. (Defs.' 56.1, at ¶¶ 6, 8.) According to Plaintiff, she told them that she took heart medication but did not need it at that moment, declined their offer to take her to the emergency room, and was then told by Kulik that she could not go to court and to return to her cell. (*Id.* at ¶¶ 9, 11; Szabo Dep., at 20:6-18, 23:14-22, 24:1-12.) According to Plaintiff, she tried to return to her cell voluntarily, but instead was "dragged" thirty feet by Defendant Dia Cascone, the female cell attendant, back to her cell. Plaintiff alleges that Cascone called her a "stupid bitch" and told Plaintiff that her "other lawsuits against the other prior officers [were] going to fall through." (*Id.* at 24:13-25:12, 27:6-10, 28:7-11; Defs.' 56.1, at ¶ 21.)[3] Plaintiff told Cascone, "If you put your hands on me, I will defend myself," but denies that she did anything to defend herself because she was handcuffed. (Defs.' 56.1, at ¶ 19.) Once inside the cell, Cascone pushed Plaintiff, the force of which caused Plaintiff's head to bang against the cellblock metal gate. (*Id.* at ¶ 25.)

While Defendants do not dispute that Cascone pushed Plaintiff, they vigorously dispute the events that led up to that moment. According to Kulik, Plaintiff said that she wanted to go to the hospital and he told her that she needed to return to her cell because "she must be cleared medically prior to being taken to court." (Affidavit of William Kulik ("Kulik Aff."), Dkt. 95-6, at

---

[3] Plaintiff is a serial litigant with a filing injunction against her in this Court. (*See* Dkt. 5, at 1 & nn.1-2.)

3

¶¶ 7-13.) Plaintiff, however, did not want to return to her holding cell, and instead began "to kick and scream" (*id.* at ¶ 14) and "became violent" (Affidavit of Dia Cascone ("Cascone Aff."), Dkt. 95-5, at ¶¶ 8-9). According to Defendants, while Kulik, Palmer, and Cascone were attempting to return Plaintiff to her cell, Plaintiff: (1) tried to grab Kulik's arm, pull him into her cell, and bite his hand (Kulik Aff., at ¶¶ 16-17); (2) grabbed on to Cascone, twisted her wrist, and caused her thumb to strike into the cell door (Cascone Aff., at ¶ 13); and (3) spit in Cascone's face (*id.* at ¶ 14; Kulik Aff., at ¶ 19).

Plaintiff alleges that she had pain in her ankles as a result of being dragged, and pain in her head from being pushed. (Szabo Dep., at 31:14-32:25.) At one point during her deposition, Plaintiff said she had no visible injuries to her head as a result of this incident, but then later said she "immediately" had a bump the "size of a baseball." (*Id.* at 77:2-21; Defs.' 56.1, at ¶ 30.)

Based on this incident, Plaintiff was subsequently arrested and charged with assault of Cascone in the second degree, assault of Cascone in the third degree, obstructing governmental administration, and harassment in the second degree. (Dkt. 95-12.) Plaintiff pleaded guilty to assault in the second degree on May 23, 2017. (Dkt. 95-13.)

### 2. The Second Incident

Hours after the first incident on April 16, 2016, Defendants Paul Bartelotti and Tarell Winfield took Plaintiff to be processed for assaulting Officer Cascone. (Szabo Dep., at 34:10-13.) According to Plaintiff, Winfield dragged her down, and then back up, two flights of stairs while Plaintiff was handcuffed, on her knees, and attempting to cooperate with the officers. Plaintiff alleged that this caused "bilateral knee injuries and a laceration to [her] foot". (*Id.* at 33:12-18, 35:17-36:25, 38:13-40:14, 45:4-46:6, 47:1-3, 48:1-23.) Plaintiff alleges that Bartelotti told Winfield to "stop hurting" Plaintiff, but Winfield replied, "she's suing a lot of officers, so who

4

gives a shit." (*Id.* at 37:11-20, 38:2-12.) Plaintiff also alleges that Defendant Sergeant James Wilson saw Plaintiff screaming for help, but failed to intervene. (*Id.* at 43:9-44:10.) Additionally, Plaintiff claims that she told Winfield that the handcuffs were too tight, causing "[e]xcruciating pain and swelling." (*Id.* at 40:2-22, 41:1-12, 42:10-25, 48:1-23, 50:1-6.) However, according to Bartelotti, he was actually the officer who escorted Plaintiff out of her cell and "[w]hen [he and Winfield] attempted to bring [P]laintiff up and down the stairs, she resisted and refused to walk. Bartelotti also claims that Plaintiff continued yelling throughout this encounter, and stated, in sum and substance, that she has sued before and will sue again." (Affidavit of Paul Bartelotti, Dkt. 95-7, at ¶¶ 8-11.)

### C. Plaintiff's Medical Examination and Treatment

On April 17, 2016, Plaintiff was taken to the hospital complaining of trauma to her head, neck, knee, wrists, left thumb, and shoulder, facial and toe abrasions, and a left great toe laceration, due to the prior day's events. (Dkt. 95-18, at 1, 8.)[4] Plaintiff complained of a "moderate" headache, and that she was "[i]n acute pain from multiple injuries, with facial abrasions." (Dkt. 95-18, at 5-6.) A physical examination revealed no swelling in Plaintiff's extremities or joints, but a dermatological examination did reveal a "laceration on [Plaintiff's] left great toe" and unspecified "knee trauma." (*Id.* at 7.) X-rays taken of Plaintiff's left ankle, left foot, left and right knees, left and right hands, cervical spine, and left shoulder all came back negative for any abnormalities or injuries. (*Id.* at 9-10, 12-17, 20-29.)[5] Plaintiff was treated with an anti-bacterial for the toe laceration and over-the-counter pain medicine for her "hand injury [not otherwise

---

[4] Except for deposition transcripts, page numbers refer to the pagination generated by the court's CM/ECF docketing system, and not the document's internal pagination.

[5] A May 17, 2016 x-ray of Plaintiff's right hip was also unremarkable. (*Id.* at 18-19.)

5

specified]." (*Id.* at 9-10.) There is no evidence that Plaintiff was given any treatment for her knees, although Plaintiff claims she had "swelling and bruising" on her knees "the size of her palm" for weeks, was prescribed "several months" of physical therapy, and was prescribed a cane. (Szabo Dep., at 68:3-69:11, 72:1-6.)

## II. Procedural History

Plaintiff filed her complaint in this action on June 28, 2016. (Dkt. 1.) On July 20, 2016, the Court denied Plaintiff permission to file her complaint against the City of New York, the New York City Department of Correction, the State of New York, and the judge she attempted to arrest. (Dkt. 5.) However, the Court allowed Plaintiff's claims against the remaining Defendants to go forward. (*Id.*) On January 31, 2017, Plaintiff withdrew her claims against John Doe 4 and Jane Does 9, 10, and 11. (1/31/17 docket entry.) On April 4, 2017, this matter was stayed pending the resolution of Plaintiff's criminal proceedings. (Dkt. 52.) On June 27, 2017, Plaintiff agreed, in light of her guilty plea to the criminal charges, to voluntarily discontinue her false arrest claims against all defendants. (Dkts. 62, 68.) On September 7, 2017, Plaintiff withdrew her claims against Mary Valley and Sergeant Linda Sills. (9/7/17 docket entry.) Defendant Parascandolo filed her motion for summary judgment on July 20, 2018, and the City Defendants filed their summary judgment motion on August 1, 2018. (Dkts. 92, 94.)

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

6

prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted; alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). The Court also construes any disputed facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449

U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("[The Second Circuit] liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest.") (internal quotation marks and citations omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Defendants move for summary judgment on Plaintiff's remaining claims for: (1) undue delay (against Defendants Kulik and Palmer); (2) excessive force (against Defendants Parascandolo, Cascone, and Winfield); and (3) failure to intervene (against Defendants Wilson and Bartelotti).

### I. Claims against Defendants Gambardella, Ranieri, and DeGroat

Plaintiff has failed to allege any personal involvement by Defendants Gambardella, Ranieri, and DeGroat in the events described above. Therefore, the City Defendants' motion for summary judgment is granted as to them. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)).

### II. Undue Delay Claim (against Defendants Kulik and Palmer)

Liberally construing Plaintiff's complaint, she alleges that her Fourth Amendment rights to a speedy arraignment were violated when Defendants Kulik and Palmer allegedly refused to

transport her to court on April 16, 2016.[6] Plaintiff's claim fails as a matter of law.

"[T]he Fourth Amendment requires a speedy arraignment following an arrest made without probable cause, such as a warrantless arrest." *Soberanis v. City of N.Y.*, 244 F. Supp. 3d 395, 401 (S.D.N.Y. 2017); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991) ("States must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.") (emphasis, citations, and internal quotation marks omitted). "In such a circumstance, the arraignment is normally expected to occur within 48 hours." *Soberanis*, 244 F. Supp. 3d at 401. Plaintiff has put forth no evidence that Defendants Kulik and Palmer's conduct caused Plaintiff's pre-arraignment detention to exceed the forty-eight hour limit. Accordingly, Plaintiff's claim cannot support an action under section 1983 for undue delay. *Simmons v. Kelly*, No. 06-CV-6183 (RJS), 2009 WL 857410, at *6 (S.D.N.Y. Mar. 31, 2009).

**III. Excessive Force Claims (against Defendants Parascandolo, Cascone, and Winfield)**

Pre-arrest excessive force claims are analyzed under the Fourth Amendment "reasonableness" standard. *Kerman v. City of N.Y.*, 261 F.3d 229, 238-39 (2d Cir. 2001). "A determination of reasonableness under the Fourth Amendment 'requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 239 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Evaluation of a particular use of force "must be . . . from the perspective of a

---

[6] City Defendants construe this claim as a due process claim (City Defendants' Brief ("City Defs.' Br."), Dkt. 97, at 15-16); however, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims[,]" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted).

9

reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396).

For post-arrest, pre-trial detainees, however, the right "to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *Quiller v. City of N.Y.*, No. 16-CV-3205 (RJS), 2018 WL 3418777, at *3 (S.D.N.Y. July 13, 2018) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Pretrial detainees bringing excessive force claims "must show only that the force purposely or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham*, 490 U.S. at 396). A non-exhaustive list of factors that a court may consider in determining "the reasonableness or unreasonableness of the force used" includes: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

### A. Defendant Parascandolo

Plaintiff alleges that Defendant Parascandolo used excessive force when she scratched Plaintiff's face while trying to grab her cellphone and kicked Plaintiff while she was handcuffed. Plaintiff's allegations of physical injury, coupled with the surveillance video showing what appears to be Parascandolo making a kicking motion in the direction of Plaintiff's left leg while Plaintiff was subdued on the ground by other officers (Video, Dkt. 95-8, at 4:09-4:12), create a genuine issue of material fact. "If [Plaintiff's] account is credited, and thus she was intentionally kicked in the [leg] for no reason while handcuffed on the floor, the Court cannot hold that the alleged

gratuitous use of force by an officer can constitute an objectively reasonable use of force as a matter of law." *Davis v. City of N.Y.*, No. 04-CV-3299 (JFB)(RLM), 2007 WL 755190, at *12 (E.D.N.Y. Feb. 15, 2007) (collecting cases); *see also Johnson v. City of N.Y.*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment on a claim of excessive force and noting that "there surely would be no objective need to 'stomp' and 'kick' an individual already under police control"); *Pierre-Antoine v. City of N.Y.*, No. 04-CV-6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (noting that it is "much harder" to show that force was necessary to effect an arrest when the suspect is already handcuffed). Therefore, Defendant Parascandolo's motion for summary judgment is denied.

### B. Defendant Cascone

Plaintiff alleges that Defendant Cascone used excessive force when Cascone pushed her into the cell at the 120th Precinct, causing Plaintiff's head to bang into the metal cell gate. Although the parties do not—and, in light of her guilty plea, Plaintiff cannot—dispute that Plaintiff assaulted Cascone, "[a]n assault conviction does not bar an individual from bringing a claim for excessive force under [§] 1983, even where the conviction arises out of the same occurrence and involves the same defendants if excessive force was not relevant to, and not raised in, the criminal action." *Gantt v. Ferrara*, No. 15-CV-7661 (KMK), 2017 WL 1192889, at *15 (S.D.N.Y. Mar. 29, 2017) (citation omitted).

Here, Defendants have proffered no evidence that excessive force was raised in Plaintiff's criminal proceedings relating to the assault of Cascone to which Plaintiff pled guilty. Notably, in *Griffin v. Crippen*, the Second Circuit held that:

> [a]lthough [the plaintiff's] excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim [is] inappropriate because there are genuine issues of material fact concerning what transpired after [the plaintiff] was handcuffed and whether the guards maliciously used force against

11

him. The district court mistakenly concluded that, because [the plaintiff] pled guilty to assaulting the guards and because his injuries were not severe, his claim failed as a matter of law and no reasonable jury could find in his favor. The assault charges to which [the plaintiff] pled guilty certainly cast doubt on his claim. They do not, however, preclude a reasonable jury from finding that excessive force was used against him on the day in question. Moreover . . . [the plaintiff] need not prove "significant injury" to make out an excessive force claim and, thus, the fact that he suffered only minor injuries does not warrant dismissal. Although *de minimis* uses of force generally do not suffice to state a constitutional claim, determining as a matter of law here that appellant's injuries were *de minimis* was error.

193 F.3d 89, 91–92 (2d Cir. 1999). Such is the case here. The evidence in support of Plaintiff's excessive force claim is "weak", particularly as she gave contradictory testimony about whether she had visible injuries as a result of this incident, and only reported a "moderate" headache when she was taken to the hospital. (*Compare* Szabo Dep., at 33:1-4, 76:11-25, 77:1-21 *with* Dkt. 95-18, at 5-6; *see also* Defs.' Br., at 20.) However, although Plaintiff's minimal injuries and factual inconsistencies provide "ammunition for cross-examination, they do not provide a basis for this court to recommend dismissal of [her] excessive force claims as a matter of law." *Galberth v. Durkin*, No. 9:14-CV-115 (BKS)(ATB), 2017 WL 4325774, at *8 (N.D.N.Y. Aug. 31, 2017); *see also Joseph v. Deluna*, No. 15-CV-5602 (KMW), 2018 WL 1474398, at *5 (S.D.N.Y. Mar. 23, 2018) (finding plaintiff's claims that he suffered injury and pain, even in "the absence of documentation of any serious injuries," sufficient for his excessive force claim to survive summary judgment); *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 567 (E.D.N.Y. 2013) ("The slightness of injury suffered as a result of the challenged use of force . . . does not preclude a finding that such force was objectively unreasonable."). Moreover, here, the parties continue to dispute the need for and nature of Cascone's use of force on Plaintiff, as well as the circumstances leading up to the altercation between Plaintiff and Cascone. *Tardif v. City of N.Y.*, No. 13-CV-4056 (KMW), 2017 WL 3634612, at *5 (S.D.N.Y. Aug. 23, 2017). Therefore, the Court finds that summary judgment is not appropriate on Plaintiff's claim of excessive force as to Cascone.

## C. Defendant Winfield

For substantially the same reasons, the Court denies the City Defendants' motion for summary judgment with respect to Plaintiff's allegations that Defendant Winfield used excessive force by dragging Plaintiff up and down the stairs.[7] The City Defendants argue that Plaintiff's allegations are "wholly fanciful" because it is inconceivable that "the only injuries [Plaintiff] suffered as a result of this dragging up and down the stairs whilst on her knees is a laceration and vaguely described "bilateral injuries[.]" (Defs.' Br., at 21-22.) While Plaintiff's claim seems to beggar belief, the Supreme Court has recognized that "[w]hen prison officials maliciously and sadistically use force to cause harm[,] . . . contemporary standards of decency always are violated[,] . . . whether or not significant injury is evident." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *see also Lemmo v. City of N.Y.*, 08-CV-2641 (RJD), 2011 WL 4592785, at *8 (E.D.N.Y. Sept. 30, 2011) (noting that "a jury may consider the lack of serious injury as evidence that the implemented force was not excessive," however, a reasonable jury could still find that any use of force under the circumstances was inappropriate).

Therefore, even though the medical documentation shows only that Plaintiff sustained

---

[7] However, to the extent that Plaintiff's complaint can be construed as bringing a tight handcuffing claim against Defendant Winfield, that claim fails as a matter of law. "Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs v. Cantwell*, No. 10-CV-1663 (JPO), 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the [plaintiff's] pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Case v. City of N.Y.*, 233 F.Supp.3d 372, 385 (S.D.N.Y. 2017) (first alteration in original) (quoting *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008)). "Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising." *Omor v. City of N.Y.*, No. 13-CV-2439 (RA), 2015 WL 857587, at *7 (S.D.N.Y. Feb. 27, 2015). "The injuries need not be severe or permanent, but must be more than merely *de minimis*." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F.Supp.2d 575, 592 (S.D.N.Y. 2013) (internal citations and quotation marks omitted). Here, Plaintiff does not allege any injury beyond temporary discomfort or bruising.

minor injuries on April 16, 2013—*i.e.*, unspecified "knee trauma" and lacerations—that is an insufficient basis on which to grant summary judgment, because there remains a genuine dispute about how much force was used. *See Quiller*, 2018 WL 3418777, at *4 ("The 'core judicial inquiry' is not whether the plaintiff suffered 'some arbitrary quantity of injury,' but rather whether he suffered a 'nontrivial' use of force that 'was applied . . . maliciously and sadistically to cause harm.'") (quoting *Wilkins*, 559 U.S. at 37). As a result, the City Defendants' motion for summary judgment is denied as to Plaintiff's excessive force claim as to Winfield.

### IV. Failure to Intervene Claims (against Defendants Wilson and Bartelotti)

In light of the Court's holding with respect to Plaintiff's excessive force claims, the City Defendants' motion for summary judgment regarding Plaintiff's related failure to intervene claims—*i.e.*, that Defendants Wilson and Bartelotti failed to intervene in Defendant Winfield's use of excessive force against Plaintiff—is denied. "A police officer is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016). Plaintiff clearly alleges that both Wilson and Bartelotti observed Winfield dragging her up and down the stairs and failed to intervene. Thus, even if only Winfield personally applied excessive force against Plaintiff, Wilson and Bartelotti could be liable for failing to intervene. *See Jackson on Behalf of Z.J. v. City of Middletown*, No. 3:11-CV-00725 (JAM), 2017 WL 2218304, at *6 (D. Conn. May 19, 2017) (denying defendants' motion for summary judgment on an excessive force claim that was premised on an officer's failure to intervene).

### V. Qualified Immunity

"Qualified immunity shields government officials from liability for civil damages as a

result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Hartline v. Gallo,* 546 F.3d 95, 102 (2d Cir. 2008) (citation and internal quotation marks omitted). "As qualified immunity is an affirmative defense, the defendants bear the burden of proof." *Matthews v. City of N.Y.*, 889 F. Supp. 2d 418, 432 (E.D.N.Y. 2012) (citing *Lore v. City of Syracuse,* 670 F.3d 127, 149 (2d Cir. 2012)). In order to deny qualified immunity to a government official, "a court must find both that (1) the plaintiff has alleged facts that comprise a violation of a constitutional right, and (2) the violated constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Id.* (quoting *Pearson v. Callahan,* 555 U.S. 223, 232, 236 (2009)). Moreover, "officers are entitled to qualified immunity if 'officers of reasonable competence could disagree' as to [the] legality of their action." *Felmine*, 2011 WL 4543268, at *9 (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)). The objective reasonableness inquiry of whether the shield of qualified immunity applies to a defendant's conduct is a mixed question of law and fact. *Kerman v. City of New York,* 374 F.3d 93, 109 (2d Cir. 2004). As stated above, Plaintiff's surviving claims allege plausible allegations of excessive force and failure to intervene. Moreover, "the law was clearly established that [Plaintiff] had a constitutional right to be free" from excessive force. *Henry v. Dinelle*, 929 F. Supp. 2d 107, 128 (N.D.N.Y. 2013), *aff'd*, 557 F. App'x 20 (2d Cir. 2014). At this stage, the facts do not support a finding, as a matter of law, that Defendants' actions were "objectively reasonable" with respect to Plaintiff's remaining claims. Therefore, Defendants are not entitled to qualified immunity at this stage.

## CONCLUSION

For the reasons stated herein, Defendant Parascandolo's motion for summary judgment is denied in its entirety and the City Defendants' motion is granted in part and denied in part.

Defendants Gambardella, Ranieri, and DeGroat are terminated from this action. The City Defendants' motion for summary judgment is also granted as to Plaintiff's claims for undue delay and tight handcuffing. Plaintiff's claims for excessive force (against Defendants Parascandolo, Cascone, and Winfield) and failure to intervene (against Defendants Wilson and Bartelotti) will proceed to trial. The parties shall submit a Joint Pretrial Order by March 22, 2019. A pretrial conference will be scheduled thereafter.

                              SO ORDERED.

                               /s/ Pamela K. Chen
                              PAMELA K. CHEN
Dated: February 6, 2019       United States District Judge
       Brooklyn, New York